**Vivian O. KENDALL and Hal A. Kendall, Plaintiffs,**

v.

**AMERICAN HAWAII CRUISES, et al., Defendants.**

**Civ. No. 87–0890 HMF.**

United States District Court, D. Hawaii.

Jan. 24, 1989.

James Krueger, Wailuku, Maui, Hawaii, for plaintiffs.

Leonard F. Alcantara, Robert G. Frame, Cynthia A. Farias, Honolulu, Hawaii, for defendants.

## ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

FONG, Chief Judge.

### INTRODUCTION

Defendant American Hawaii Cruises' present motion for summary judgment, or

in the alternative, for separate trial raises significant concerns of notice for all persons who travel upon common carriers. Specifically, defendant now asks the court to bar plaintiffs' claim for negligence by enforcing a contractual time limitation clause for filing such law suits which deeply is imbedded in its cruise ship tickets. Hearing on this matter was held on November 21, 1988; Timothy P. McNulty appeared on behalf of the plaintiffs, and Cynthia A. Farias represented defendant American Hawaii Cruises. Since the court finds that defendant's notice provisions reasonably communicated these time limitations to plaintiffs, and because the court rejects plaintiffs' other contentions, defendant's motion for summary judgment is granted. Accordingly, this court need not consider defendant's alternative motion for separate trial.

## BACKGROUND

On December 2, 1985, plaintiff Vivian Kendall suffered severe and permanent injuries while a passenger aboard the cruise ship, S.S. Constitution, when a spring line snapped from its mooring and slashed her in the legs. Mrs. Kendall, who was accompanied by her husband Hal, had been on the ship's deck observing Maui's scenery while the S.S. Constitution, owned and operated by defendant American Hawaii Cruises, berthed in its harbor.

In the months following the accident, plaintiffs submitted all accident-related bills directly to defendant. Although no formal arrangement had been worked out between the parties for doing so, defendant honored all such bills. At no time, however, did the parties enter into a formal settlement of claims, nor did defendant intimate that any such settlement was forthcoming. (Deposition of Hal Kendall, pp. 35–37, 63). Moreover, at no time did defendant ask plaintiffs for a release of potential claims. (Deposition of Vivian Kendall, p. 56; Deposition of Hal Kendall, p. 39). To this date, Mrs. Kendall's medical and rehabilitation costs for treatment of these injuries have approached $50,000, all of which have been paid voluntarily by

defendant. (Deposition of Hal Kendall, pp. 36, 46).

Apparently, this amicable arrangement continued during the ensuing year until American Hawaii Cruises first learned that plaintiffs had retained an attorney on January 23, 1987, to consider filing suit against it. Plaintiffs eventually did file this suit in negligence for damages and for loss of consortium on November 13, 1987, nearly two years after the accident.

In response to plaintiffs' complaint, defendant now moves for summary judgment, relying on the terms of the multi-leaf passenger ticket here at issue. Defendant claims that plaintiffs' action is time-barred as a matter of law by the cruise ticket's express terms, which terms are contained on pages one through nine of the ticket booklet. More specifically, plaintiffs' filing of its claim nearly two years subsequent to the accident's occurrence violates the one-year time limitation clause found within plaintiffs' contractual agreement with defendant. This clause, located within the cruise ticket, states the following:

.    .    .    .    .

13. TIME LIMITATIONS: NOTICE OF CLAIMS AND TIME TO SUE

(a) *Bodily injury or death.* The Carrier and the vessel shall not be responsible or liable for bodily injury to or death of any passenger and no suit, action or proceeding, whether *in personam* (against persons) or *in rem* (against property), shall be maintainable against them for bodily injury or death unless:

(i) a claim in writing giving the full particulars shall have been delivered to the Carrier or its General Agent within six (6) months when such death or bodily injury occurred: and

(ii) the suit or action on such claim shall have been instituted or filed within one (1) year from the date when such death or bodily injury occurred, as provided for under United States Code [App.], Title 46, Section 183b.

Such time limitations, when noticed properly on the ticket itself, are expressly permitted under general maritime common law

and 46 U.S.C.App. § 183b(a), the latter which states as follows:

It shall be unlawful for the manager, agent, master, or owner of any sea-going vessel ... transporting passengers ... to provide by rule, contract, regulation, or otherwise a shorter period for giving notice of, or filing claims for loss of life or bodily injury, than six months, and for the institution of suits on such claims, than one year, such period for institution of suits to be computed from the day when the death or injury occurred.

To defeat defendant's summary judgment motion, plaintiffs have raised the following four issues to convince this court that genuine issues of material fact exist:

1. whether the ticket reasonably imparted notice of time limitation provisions contained therein;

2. whether the ticket remains the Kendalls were left with after the ticketing process actually contained the time limitation clause;

3. whether American Hawaii Cruises is estopped by its conduct to assert the contractual time limitations; and

4. whether the Kendalls are excused from the contractual limitations pursuant to 46 U.S.C.App. § 183b(b).

(Plaintiffs' memorandum, p. 6). The court will address each of plaintiffs' arguments individually within the summary judgment context.

## DISCUSSION

I. STANDARD OF REVIEW FOR SUMMARY JUDGMENT:

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered when:

the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Thus, defendant American Hawaii Cruises has the initial burden of "identifying for the court those portions of the materials on file in the case that it believes demonstrate the absence of any genuine issue of material fact." *T.W. Electrical Service, Inc. v. Pacific Electrical Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir.1987), *citing Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Specifically, defendant as movant must be able to show "the absence of a material and triable issue of fact," *Richards v. Neilsen Freight Lines,* 810 F.2d 898, 902 (9th Cir.1987), although it need not necessarily advance affidavits or similar materials to negate the existence of an issue on which the non-moving party will bear the burden of proof at trial. *California Architectural Building Products, Inc. v. Franciscan Ceramics,* 818 F.2d 1466, 1468 (9th Cir.1987), *cert. denied,* — U.S. ——, 108 S.Ct. 698, 98 L.Ed.2d 650 (1988). *See Celotex Corp.,* 106 S.Ct. at 2553. *But cf. id.* at 2555–56 (White, J., concurring).

If American Hawaii Cruises meets this initial burden, then the plaintiffs may not defeat its motion for summary judgment in the absence of any significant probative evidence tending to support their legal theory. *Commodity Futures Trading Comm'n v. Savage,* 611 F.2d 270, 282 (9th Cir.1979). The Kendalls cannot merely stand on their pleadings, nor can they simply assert that they will be able to discredit defendant's evidence at trial. *See T.W. Electrical Service, Inc.,* 809 F.2d at 630. Similarly, legal memoranda and oral argument are not evidence and do not create issues of fact capable of defeating an otherwise valid motion for summary judgment. *British Airways Bd. v. Boeing Co.,* 585 F.2d 946, 952 (9th Cir.1978), *cert. denied,* 440 U.S. 981, 99 S.Ct. 1790, 60 L.Ed. 2d 241 (1979), *reh'g denied,* 441 U.S. 968, 99 S.Ct. 2420, 60 L.Ed.2d 1074 (1979).

Moreover, "if the factual context makes the nonmoving party's claim *implausible,* that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial." *Franciscan Ceramics,* 818 F.2d at 1468, *citing Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 1356,

89 L.Ed.2d 538 (1986). However, when "direct evidence" produced by the moving party, in this case defendant, conflicts with "direct evidence" produced by the party opposing summary judgment, "the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact." *T.W. Electrical Service, Inc.*, 809 F.2d at 631. Furthermore, all inferences from the facts must be drawn in the light most favorable to the plaintiffs. *Id.*

## II. THE ISSUE OF REASONABLE NOTICE:

As a preliminary matter, neither party disputes the maritime nature of the passenger ticket contract here at issue, nor the fact that this court must scrutinize the validity of its terms under general maritime common law. *Cf. Harris v. Waikane Corporation*, 484 F.Supp. 372, 378 (D.Haw. 1980) ("[c]ontracts to charter vessels, whether for personal or commercial use, have always been viewed as maritime in nature"); *Laredo Offshore Constructors, Inc. v. Hunt Oil Co.*, 754 F.2d 1223, 1231 (5th Cir.1985) ("[a]n agreement to transport people and supplies in a vessel to and from a well site on navigable waters is clearly a maritime contract"). Accordingly, general maritime common law here supersedes all conflicting state law in the court's resolution of the parties' contractual dispute. *See, e.g., Williams v. United States*, 711 F.2d 893, 895 (9th Cir.1983); *Laredo Offshore Constructors, Inc.*, 754 F.2d at 1230; *In re Holoholo Litigation*, 557 F.Supp. 1024, 1027 (D.Haw.1983).

Within this general maritime framework, plaintiffs initially contest defendant's motion for summary judgment by challenging the reasonableness of the notice provisions found within defendant's ticket contract. Although plaintiffs do not dispute that the issue of reasonableness is one for this court to decide as a matter of law, *Deiro v. American Airlines, Inc.*, 816 F.2d 1360, 1364 (9th Cir.1987), they argue that defendant's inadequate notice of the time limitation clause in paragraph 13 (of 15) invalidates this limitation's binding nature. Specifically, plaintiffs complain that they received inadequate warning of this time limitation provision, since it was not noticed on the face page of the multi-paged cruise ticket contract as arguably is required by law. *See Barbachym v. Costa Line, Inc.*, 713 F.2d 216, 219 (6th Cir.1983).

According to plaintiffs, their passenger ticket's face page consisted merely of an "accounting copy" which contained absolutely no warning of the limitation terms found within the body of the contract at paragraph 13. (Plaintiffs' memorandum, p. 7). As proof of this assertion, plaintiffs proffer a photo taken immediately prior to their boarding the American Hawaii Cruise ship, which photo shows Mr. Kendall holding onto the ticket now in dispute with what plaintiffs contend to be the "accounting copy" visible. To buttress their position of inadequate notice, plaintiffs also assert that the time limitation clause itself physically was missing from their cruise ticket booklet, so that they could not have had reasonable notice of that provision's express terms even if the face page's notice were otherwise reasonable.

Defendant, on the other hand, claims that the ticket booklet's face page contained more than adequate notice of the limitation terms found within. According to defendant, the accounting copy was not, in fact, the face page of the ticket document given to plaintiffs, since the accounting copy is removed by its agents in San Francisco prior to the mailing of tickets to passengers. (Affidavit of Derry Marble). Rather, the face page of the document given to plaintiffs prior to their boarding was the page entitled "PASSENGERS' TICKET CONTRACT." An examination of this title page shows that the following "IMPORTANT NOTICE" is stated directly below its caption in small, but clear, type and is highlighted within a box:

READ BEFORE ACCEPTING: Please read carefully the terms of this Ticket Contract beginning on page 1 and continuing through page 9. The terms are an integral part of the contract between passengers and the Carrier. In accepting this contract, you agree to the terms. Attention is particularly drawn to the

Carrier's right to surcharge for increased fuel costs, etc. (Section 5), and the exemptions and limitations on the Carrier's liability (including Sections 8 through 13). Directly below this notice provision, the title page then lists the ticket's table of contents, giving the following notation for the time limitation provision now in dispute: "13. TIME LIMITATIONS: NOTICE OF CLAIMS AND TIME TO SUE."

Turning to page "1" of the passenger ticket, examination shows that the following terms are listed beneath the heading, "NOTICE OF LIMITATIONS ON CARRIER'S LIABILITY," which is printed in large, bold-faced type:

This Ticket Contract provides the following limitations on Carrier's liability for:

• • • • •

2) Personal Injury—$10,000 (Section 12, page 8.)

• • • • •

We direct your attention to Section 13, page 8 which sets forth the limitations on time to file claims or bring suit against the Carrier ...

No further warnings are listed within the body of the ticket. Although plaintiffs claim that the page containing the limitation clause was missing from their passenger ticket, they do not dispute having received the above described title page as well as page "1."

■ Accepting plaintiffs' factual allegations as true for the purposes of summary judgment, the court must resolve this issue of notice guided by the "reasonable communicativeness" test first adopted by the Ninth Circuit in *Deiro v. American Airlines, Inc.*, 816 F.2d 1360, 1364 (9th Cir. 1987) (the court here adopted the test used by the First Circuit Court of Appeals in the steamship case of *Shankles v. Costa Armatori, S.P.A.*, 722 F.2d 861, 863 (1st Cir. 1983), noting that the test's reasoning "is equally applicable to passengers of air carriers"). *See also Marek v. Marpan Two, Inc.*, 817 F.2d 242, 245 (3d Cir.1987), *cert. denied,* —— U.S. ——, 108 S.Ct. 155, 98 L.Ed.2d 110 (1987) (adopting this "reasonable communicativeness" standard);

*Barkin v. Norwegian Caribbean Lines*, 1988 A.M.C. 645, 647 (D.Mass.1987). Under the confines of this test, this court must conduct a two-pronged analysis to determine whether notice of the disputed time limitation provision in this case was, in fact, reasonable. *Deiro*, 816 F.2d at 1364.

First, this court must analyze the physical characteristics of the ticket contract— "features such as size of type, conspicuousness and clarity of notice on the face of the ticket, and the ease with which a passenger can read the provisions in question." *Id.*, *citing Shankles.* Subsequent to this initial inquiry, the court then must look to extrinsic factors surrounding the purchase and subsequent retention of the ticket—these "include the passenger's familiarity with the ticket, the time and incentive under the circumstances to study the provisions of the ticket, and any other notice that the passenger received outside of the ticket." *Id.*

■ Applying this two-pronged test to the facts of this case and giving consideration first only to the ticket's physical characteristics, the court notes that the Kendalls initially fail to persuade it that the notice given by defendant was deficient. Thus, this court has an even stronger case to uphold the time limitation clause here at issue than in both *Deiro* and *Shankles*. *See, e.g., Deiro*, 816 F.2d at 1364 ("[a]s in *Shankles*, if the only consideration in the instant case were the physical characteristics of the ticket, this would be a close case"); *Shankles*, 722 F.2d at 866.

Plaintiffs initially argue that the face page of their ticket was the "accounting copy," which contained no notice or warning of the time limitation clause that is the basis of this motion; plaintiffs proffer a photograph of the ticket in question to bolster their position. However, the court takes judicial notice that the "accounting copy," in fact, could *not* have been the face page of the ticket booklet as shown in plaintiffs' photograph taken prior to their boarding the cruise ship. Since plaintiffs only could produce the title page and pages 1, 6, and 7 of the multi-leaf ticket booklet during pretrial discovery, after admittedly

**1016**

having retained their complete ticket after the accident, that page evident in plaintiffs' photo necessarily could not have been the "accounting copy." Thus, because plaintiffs offer no plausible explanation for the absence of the "accounting copy," the court finds that the title page was, in fact, the cruise ticket's face page; this conclusion comports with defendant's standard operating procedures.

However, plaintiffs further allege that page "8," the page containing the time limitation clause, physically was missing from their ticket contract. Although this factor clearly is significant under the "physical characteristics" prong of the court's two-part test, it alone is not determinative of the notice issue. In fact, the court notes that the ticket's other physical characteristics, such as the size of type used by defendant to spell out the contract's terms, are reasonably communicative in light of both the type's clarity and a previous federal court decision which upheld the validity of an identical ticket. *See George v. American Hawaii Cruises*, No. 86–CV–73729–DT (E.D.Mich.1987). Plaintiffs, in fact, do not contest this point. Thus, by no means, do plaintiffs in this case clearly prevail under the "physical characteristics test." *Contra, e.g., Deiro*, 816 F.2d at 1364; *Shankles*, 722 F.2d at 866.

Even if the "physical characteristics test" slightly favors plaintiffs on this motion for summary judgment, this court nevertheless is convinced that the second prong of the *Deiro* test renders plaintiffs' arguments fatally deficient. Analyzing the "extrinsic factors" of this case, the court first notes that plaintiffs were in possession of the cruise ticket from the time of the accident to the point where they submitted the ticket to their attorney—a period of roughly thirteen months. (Deposition of Hal Kendall, pp. 23–24). Thus, plaintiffs had ample opportunity to familiarize themselves with the contract's time limitations even if the face page did not contain the notice provision. *E.g., Shankles*, 722 F.2d at 865 (the court affirmed the district court's grant of summary judgment, despite no facial warning or notice being on

the cover of the cruise ticket booklet); *Marek*, 817 F.2d at 247 (the court affirmed the district court's grant of summary judgment, despite the presence of carbon paper concealing the limitation terms of the cruise contract, since the passenger need only to "lift the carbon paper in the process of closely examining the ticket's provisions"); *Barkin*, 1988 A.M.C. at 648 (the district court granted summary judgment for defendant based on the cruise ticket's limitation provision, despite the fact that the ticket's first page was the "agent's copy" and contained no notice or warning).

As the court held in *Williams v. Holland America Cruises*, 1981 A.M.C. 492, 493 (E.D.Mich.1980), *citing Lipton v. National Hellenic American Lines*, 294 F.Supp. 308, 311 (E.D.N.Y.1968):

[t]he time limitation clause ... does not become relevant until after the loss or injury occurs and inquiry is afoot. In view of the function of the clause, the type-size in which it is printed is not the significant matter; there is both ample time and a powerful incentive to study the passage contract ticket promptly after a loss has occurred ...

By their very nature, then, time limitations clauses must be distinguished from other contractual limitations of liability, in that post-incident analyses are already too late in the latter context. *See Shankles*, 722 F.2d at 866–867, *citing Cada v. Costa Line, Inc.*, 547 F.Supp. 85 (N.D.Ill.1982). In this case, on the other hand, such post-incident scrutiny of the ticket booklet would have informed the Kendalls as to their need to timely file all claims.

Accordingly, merely because plaintiffs here failed to apprise themselves of the ticket's provisions in the year following the accident does not relieve them from their contractual duty to do so by their cruise ticket's express terms. As the court noted in *Barkin*, "[i]t is misleading to focus on whether [plaintiffs] actually read the contract; rather the proper focus is on whether [they] had the opportunity to read it." *Id.*, 1988 A.M.C. at 650. Since plaintiffs admittedly possessed the cruise ticket for the full year following the accident,

they had more than sufficient opportunity to familiarize themselves with the ticket's contents. *Cf. Marek*, 817 F.2d at 247 (court noted that plaintiff was charged with notice of her cruise ticket's provisions, despite the fact that the joint ticket was in her friend's possession).

■ Moreover, the fact that page "8," the page containing the time limitation clause in question, now is missing from the ticket booklet does not defeat defendant's motion in light of other undisputed extrinsic factors. First of all, plaintiffs admit that they had possession of both the title page and page "1" at all times subsequent to the accident. Careful scrutiny of these remaining pages adequately would have alerted plaintiffs of their need to inquire into the missing pages containing the limitations' terms. Both the title page and page "1" explicitly note that this time limitation clause is part of the contract, as well as inform the passenger as to its location at page "8." Thus, in the year following the accident, plaintiffs need only have contacted the cruise line in order to obtain a new ticket booklet with all pages attached. In this way, plaintiffs had sufficient access to the time limitation provision in order for them now to be bound by its one-year filing deadline. *See Barkin*, 1988 A.M.C. at 650.

Secondly, it is undisputed that plaintiffs are experienced sea cruisers. In fact, plaintiffs had been on four 7–day cruises prior to the one aboard American Hawaii Cruises in 1985. (Vivian Kendall's Response to Defendant's Interrogatories, p. 3). Nevertheless, plaintiffs admit never having read through their ticket contracts on any of these previous occasions. (Deposition of Hal Kendall, p. 72). Similarly, plaintiffs concede that they never once read through the terms of their American Hawaii Cruise ticket, even after the accident had occurred, (Deposition of Vivian Kendall, pp. 43–45; Deposition of Hal Kendall, pp. 27, 64); all this despite the fact that Mr. Kendall was familiar with the concept of statutes of limitation. (Deposition of Hal Kendall, p. 76). Thus, the missing limitations page is of little consequence to plaintiffs, who by their own admission,

would have acted no differently had the missing page been attached to their ticket booklet. Mr. Kendall's following account in the record aptly demonstrates this fact:

Q: So I take it that if there were pages missing at that time, you did not—

A: I would not have known.

(Deposition of Hal Kendall, p. 27). Therefore, plaintiffs' failure to act now cannot be excused, since " 'the passenger who omits to read takes the risk of the omission.' " *Marek*, 817 F.2d at 247, *quoting Judge Cardozo in Murray v. Cunard S.S. Co., Ltd.*, 235 N.Y. 162, 139 N.E. 226, 228 (1923).

Moreover, summary judgment on the issue of notice is appropriate, since plaintiffs will not be able to adduce additional facts at trial which would add clarity to this missing page situation; the court now is as informed as it will be to make its decision as to the ticket contract's validity. Under these circumstances, the court should attempt to harmonize, yet not arbitrarily resolve, the missing page's impact on the propriety of defendant's notice. Therefore, the court concludes that the cruise ticket in question sufficiently conforms to the Ninth Circuit's "reasonable communicativeness" standard, thereby binding plaintiffs to the time limitation clause within the ticket booklet. Since no genuine issue of material fact exists with regard to the question of notice, the court now must consider plaintiffs' remaining arguments.

### III. THE ISSUE OF ESTOPPEL:

■ Accepting the fact that the ticket limitation clause is valid and binding on his clients for the purposes of summary judgment, counsel for plaintiffs nevertheless argues that defendant must be estopped from prevailing on its motion due to defendant's prior conduct. Initially, the court notes that plaintiffs correctly assert that procedurally the question of estoppel is one of fact, thereby being inappropriate for the purposes of summary judgment. *See Golden v. Faust*, 766 F.2d 1339, 1341 (9th Cir.1985) ("[o]nce it is determined that elements of estoppel have been sufficiently pleaded, the question of whether the stat-

ute of limitations is tolled by conduct of defendant is one of fact which should be left for resolution by the trier of fact"). However, plaintiffs neglect to point out that estoppel becomes a question of law appropriate for summary judgment when facts are not in dispute. *See, e.g., Sawyer v. County of Sonoma,* 719 F.2d 1001, 1006 f.n. 12. (9th Cir.1983); *Shamrock Development Co. v. City of Concord,* 656 F.2d 1380, 1386 (9th Cir.1981) ("[e]quitable estoppel ordinarily presents a question of fact unless only one reasonable conclusion can be drawn from the undisputed facts").

Moreover, substantively plaintiffs' estoppel argument, as it relates to defendant's maritime ticket contract, is controlled by general maritime common law, so that all state cases relied upon by plaintiffs in their supporting memorandum are inapposite. *See McQuillan v. Italia Societa Per Azione Di Navigazione,* 386 F.Supp. 462, 469 (S.D.N.Y.1974), *aff'd without op.,* 516 F.2d 896 (2d Cir.1975). For plaintiffs' estoppel theory to be cognizable under general maritime law, then, "defendant's conduct must be such as to have induced the plaintiff[s], in reliance upon it, to refrain from bringing suit." *Scheibel v. Aqwilines. Inc.,* 156 F.2d 636, 639 (2d Cir.1946). *See also Williams,* 1981 A.M.C. at 494. In other words, courts applying general maritime law to estoppel arguments in the contractual time limitation context implicitly have required an "intent" element to be satisfied. *See, e.g., Scheibel,* 156 F.2d at 639; *Williams,* 1981 A.M.C. at 494–495; *McQuillan,* 386 F.Supp. at 469. Thus, plaintiffs must proffer evidence showing that defendant through its actions intended to cause plaintiffs' claims to become time-barred.

■ Within this framework, plaintiffs assert that at the very least defendant's conduct raises issues of material fact regarding such inducement and reliance which make summary judgment inappropriate at this time. Specifically, defendant's payment of all accident-related expenses arguably caused plaintiffs to forego filing this suit until after the one-year limitation provision had expired. Although plaintiffs'

estoppel argument is appealing at first blush, the record reveals that it must be discarded along with their previous insufficient notice argument, since all evidence points to the contrary. In fact, not only does the record before the court reveal no evidence of misrepresentation on defendant's part, rather it shows express contradiction of counsel's inducement argument by his own client. Specifically, the record reveals the following telling exchange:

Q: Mr. Kendall, do you think that American Hawaii Cruises misled you in any way?

A: No, I don't.

Q: Do you think that they were up front with you about whatever was going on after the accident?

A: I would say yes.

Q: Do you think they intentionally misled you and tried to prevent you from filing a lawsuit?

A: No.

(Deposition of Hal Kendall, pp. 74–75).

Further emasculating counsel's estoppel argument are his clients' testimonies that defendant neither asked for a release of claims, (Deposition of Vivian Kendall, p. 56; Deposition of Hal Kendall, p. 39), nor promised them a settlement at any time. (Deposition of Hal Kendall, pp. 35–37, 63). *See, e.g. Williams,* 1981 A.M.C. at 495 (court rejected plaintiff's estoppel argument, despite there having been talk of a settlement offer); *McQuillan,* 386 F.Supp. at 469 (court dismissed plaintiff's estoppel defense when there were no promises or offers of settlement). In fact, the record reveals absolutely no evidence of misrepresentation on defendant's part, nor induced reliance on plaintiffs' part, as Mr. Kendall's following testimony further illustrates:

Q: Did [American Hawaii Cruises] specify that they would pay for other than the expenses they paid for?

A: They didn't specify, no.

⋅ ⋅ ⋅ ⋅ ⋅

Q: At any time, did [American Hawaii Cruises] tell you that you could get extra money other than just expenses from American Hawaii Cruises?

A: No, no, never.

. . . . .

Q: Did anyone at American Hawaii Cruises tell you that they would compensate you or Mrs. Kendall for intangible losses—

A: No.

Q: —like pain?

A: No, no.

. . . . .

Q: At any time, did anyone from American Hawaii Cruises say or indicate to you that they would pay for your loss of Mrs. Kendall's company or companionship?

A: No.

Q: At any time, did anyone from American Hawaii Cruises say that they would pay for any emotional distress that you and Mrs. Kendall might have experienced?

A: No.

(Deposition of Hal Kendall, pp. 35–37). Thus, plaintiffs cannot seek refuge from their own inaction merely by complaining that defendant at no time reminded them of the time limitation clause, since defendant was under no legal obligation to do so. *See, e.g., McQuillan*, 386 F.Supp. at 469; *Valenti v. Homes Lines Cruises, Inc.*, 614 F.Supp. 1, 7 (D.N.J.1984).

Accordingly, plaintiffs' counsel has built his estoppel argument upon a paper foundation, insufficient in law to defeat defendant's summary judgment motion. *See British Airways Bd.*, 585 F.2d at 952 (the court held that legal memoranda and oral argument are not evidence and do not create issues of fact capable of defeating otherwise valid summary judgment motions). Since the Kendalls themselves have testified as to the absence of any misrepresentation on defendant's part, the court rejects plaintiffs' estoppel argument and finds that no genuine issue of material fact exists on this question. The court, therefore, now must address plaintiffs' final argument in opposition to defendant's summary judgment motion.

## IV. THE ISSUE OF THE 46 U.S.C.App. § 183b(b) SAFETY VALVE:

■ Plaintiffs' final effort to avoid the grant of summary judgment is the contention that the safety valve provided by 46 U.S.C.App. § 183b(b) must be applied to the facts of their case. Plaintiffs contend that despite the adequacy of defendant's notice provisions in the ticket contract, the limitation clause's binding nature here should be relaxed for equitable reasons. The terms of this 46 U.S.C.App. § 183b(b) safety valve relied upon by plaintiffs are as follows:

[f]ailure to give such notice [on the part of plaintiffs], where lawfully prescribed in such contract, shall not bar any such claim—

(1) If the owner or master of the vessel or his agent had knowledge of the injury, damage, or loss and the court determines that the owner has not been prejudiced by the failure to give such notice

. . . . .

Scrutinizing the above statutory provision, the court notes that plaintiffs' § 183b(b) defense to summary judgment holds the same superficial appeal as did their previous estoppel argument. Nevertheless, such appeal is fleeting, since the § 183b(b) provision expressly pertains only to the question of *notice* and does not address plaintiffs' primary dilemma in this case—their failure to *file* suit against defendant within the one year period following the accident as is required by the terms of the ticket contract. *See Valenti*, 614 F.Supp. at 7 (*quoting Vaci v. Swedish American Line*, 200 F.Supp. 207, 210 (E.D. Pa.1961), the court noted in this regard, "The fact that an owner may have notice of a claim 'does not render inapplicable a provision in the contract requiring an action be brought within a year …' "); *Cf. Shankles*, 722 F.2d at 868 (the court discusses 46 U.S.C.App. § 183b(b) only in terms of notice, implying that the question of filing claims is completely irrelevant to this safety valve situation).

Furthermore, plaintiffs' failure to give timely notice to American Hawaii Cruises

regarding a possible suit against the cruise line "effectively precluded defendant from investigating the claim or preparing for its defense," again violating the terms of § 183b(b). *Id.* Thus, even if plaintiffs were excused by this court for their failure to timely give notice of their claim, they nevertheless could not surmount the barrier of untimely filing which presently blocks the viability of their claims. Accordingly, plaintiffs' final argument also is without merit and must be rejected; the court concludes that no genuine issue of material fact exists regarding the relevance of § 183b(b) to this context.

## CONCLUSION

Because the court finds no genuine issue of material fact concerning the reasonableness of defendant's notice, and because the court finds no merit to plaintiffs' secondary contentions as well, defendant's motion for summary judgment on all counts is GRANTED. As a result, the court need not reach the merits of defendant's alternative motion for separate trials.

IT IS SO ORDERED.